IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

CLINTON E. KIRBY AND MARTHA B. KIRBY                    PLAINTIFFS

VERSUS                          CIVIL ACTION NO: 2:09-cv-182-DCB-JMR

BANK OF AMERICA, N.A. ET AL.                           DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This cause is before the Court on Defendants' Motion for Summary Judgment [**docket entry no. 76**] and Motion in Limine [**docket entry no. 83**]; and Plaintiffs' Motion in Limine [**docket entry no. 86**] and Motion to Cease and Desist [**docket entry no. 119**]. Having carefully considered the Motions, responses thereto, and applicable statutory and case law, the Court finds and orders as follows:

## I. FACTS AND PROCEDURAL HISTORY

On August 21, 2007, Plaintiffs Clinton and Martha Kirby executed a promissory note (the "Note") to Countrywide Bank, FSB ("Countrywide") whereby they agreed to pay Countrywide $226,800 plus interest.[1] See Note, docket entry no. 88-3. The loan was secured by a lien against the Kirbys' home at 3100 Prince George Road in Hattiesburg, Mississippi, and was a refinance of the Kirbys' previous loan on the property. Id. As part of the refinance transaction, the Kirbys signed a service transfer disclosure form

---

[1] Bank of America ("BANA") is the successor in interest to Countrywide and thus the Kirbys sometimes refer to BANA rather than Countrywide. For the purposes of this Motion, however, this Court will refer to the originator of the Kirbys' loan as Countrywide.

recognizing that Countrywide "presently intend[ed] to assign, sell, or transfer the servicing of [the] mortgage loan." Servicing Transfer Disclosure, docket entry no. 76-12. In addition, the Kirbys executed a Deed of Trust (sometimes hereinafter referred to as "Deed") on the property in favor of MERS "as nominee for lender and lender's successors and assigns." Deed of Trust, docket entry no. 76-2. The Deed noted that Countrywide was the lender and granted Countrywide various rights in the collateral. Id. The Deed further stated that MERS "holds only legal title to the interests granted by Borrower in this Security Instrument."[2] Id. ReconTrust was listed as the trustee on the Deed of Trust. Id.

On August 30, 2007, only nine days after the Kirbys signed the Note, Countrywide sold it to Fannie Mae, and on September 7, 2007, indorsed it in blank and transferred it to the so-called "Fannie Mae vault" at the ReconTrust offices in Simi Valley, California, where it resided until Fannie Mae transferred it to Defendants' counsel on April 22, 2010. See Decl. of Michele Sjolander, docket

---

[2] Regarding MERS's role in the transaction, Defendants explain that the MERS system is a database which allows originators, lenders, servicers, and investors in mortgages to track transfers of servicing rights and beneficial ownership in notes that are secured by the mortgages and deeds of trust held by MERS. For its member organizations, including Countrywide and BANA, MERS holds legal title to deeds of trust as an agent for lenders. MERS is then recorded as the titleholder in the relevant land records and thus when the note associated with the property secured by the deed of trust is transferred–as it inevitably is in today's marketplace–there is no need to record an assignment of the deed because MERS remains the titleholder as an agent for the new owner of the note.

entry no. 100-1. At the time of Fannie Mae's acquisition, Countrywide Home Loans Servicing ("CHLS") retained the servicing rights to the loan through an agreement between Countrywide and Fannie Mae. Aff. of Sutton ¶ 6, docket entry no. 76-6. Not long thereafter, however, CHLS changed its name to BAC Home Loan Servicing, L.P. ("BAC").[3] Id. at ¶ 7. To summarize then, before the Plaintiffs defaulted on their payment, Fannie Mae owned the Note, having purchased it from Countrywide; MERS was the beneficiary of the Deed of Trust, acting on behalf of Fannie Mae; and BAC, formerly CHLS, was the servicer on the loan.

The Kirbys made their last payment on the Note to BAC on July 14, 2008, and then became delinquent. Id. ¶ 7; Aff. of Scheller ¶ 9, docket entry no. 76-7. Fannie Mae's procedure when a loan becomes delinquent is to assign the Deed of Trust to the servicer to carry out the foreclosure sale. Aff. of Sutton ¶ 7; Aff. of Scheller ¶ 9. Thus, on July 13, 2009, MERS, as Fannie Mae's agent, executed a Corporate Assignment of the Deed of Trust to BAC, see docket entry no. 76-4, and on July 20, 2009, the transfer of the Deed of Trust was recorded in the Forrest County, Mississippi land records. Aff. of Sutton ¶ 8; Aff. of Scheller ¶ 10. This assignment made BAC both the beneficiary of the Deed of Trust and also the

---

[3] The Defendants do not indicate when CHLS changed its name to BAC Home Loan Servicing but the exact date is immaterial and thus for clarity, this Court will assume that the name change occurred at the same time that the Note was transferred to Fannie Mae.

servicer of the loan. As a part of the foreclosure proceeding, BAC executed a Re-Appointment of the Trustee, reappointing ReconTrust as the Trustee in the Deed of Trust,[4] see docket entry no. 76-5; Aff. of Scheller ¶ 12, and ReconTrust notified the Kirbys of the possibility of foreclosure.[5] See ReconTrust Letter, docket entry no. 25-5.

Before ReconTrust could initiate the foreclosure proceedings on the Kirbys' home, the Kirbys filed suit against the Defendants in the County Court of Forrest County, Mississippi. The Defendants removed to this Court on September 4, 2009, and this Court subsequently denied the Kirbys' Motion to Remand. In their Amended Complaint [docket entry no. 25], the Kirbys assert claims for (1) quiet title, (2) tortious interference with contract, (3) breach of fiduciary duty, (4) breach of contract, (5) slander of title, (6) fraudulent misrepresentation, (7) negligent misrepresentation, (8) and conspiracy to commit fraud. The Court will address these claims seriatim.

---

[4] Mindy Scheller explained that ReconTrust employees Jill Arnold and Kari Marx, vested with authority to sign the Re-Appointment of Trustee on BAC's behalf, executed the reappointment agreement. See Aff. of Scheller ¶ 12.

[5] To complicate the matter further, shortly after the Defendants filed their present Summary Judgment Motion, BANA merged with BAC. See Dec. 7, 2011, Order, docket entry no. 104. As it currently stands, BANA via its merger with BAC is now the servicer of the loan. For clarity's sake, the Court will refer to the Parties as they stood at the time the Kirbys filed suit. In other words, the Court will not refer to BANA in its analysis, even though it has been substituted for BAC.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is apposite "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party." Ginsberg 1985 Real Estate P'ship v. Cadle Co., 39 F.3d 528, 531 (5th Cir. 1994) (citations omitted). The party moving for summary judgment bears the initial responsibility of apprising the district court of the basis for its motion and the parts of the record which indicate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

"Once the moving party presents the district court with a properly supported summary judgment motion, the burden shifts to the non-moving party to show that summary judgment is inappropriate." Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). But the nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

5

Moreover, "[t]he mere existence of a scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment." Anderson, 477 U.S. at 252. Summary judgment must be rendered when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

### III. ANALYSIS

#### A. Quiet Title

Each of the Kirbys' individual claims can be traced to a single underlying premise–they do not believe that the Defendants' transactions bestowed upon ReconTrust the requisite authority to initiate the foreclosure process on their home. Throughout this litigation, the Kirbys have painted a dim picture of the collective actions taken by the Defendants, essentially accusing the Defendants of perpetrating a sophisticated and fraudulent scheme against them. In their Amended Complaint, the Kirbys allege that the current status of the Note and the title to their property is clouded with uncertainty, citing two specific facts to support this assertion:

> (1) BAC admitted in its answer to the Kirbys' first complaint that Fannie Mae was the holder of the note at the time litigation was begun, and (2) ReconTrust communicated to a title insurance company that the property had a "marketability of title issue" and stated that "MERS" was the owner of the Deed of Trust and was the servicer for the Noteholder.

Id. at 16.

On October 5th, 2011, the Court held an evidentiary hearing regarding the instant Motion at the United States Courthouse in Hattiesburg, Mississippi. At that hearing, Clinton Kirby expressed additional frustration regarding the late appearance of an indorsed copy of the Note they signed in favor of Countrywide, which was different from the previous unindorsed Note presented to the Court by the Defendants. Compare Note, docket entry nos. 25-10, 76-1, with Note, docket entry 88-3. The newest version of the Note bore the indorsements of Countrywide to CHLS and then CHLS in blank. Indeed, the Court stated its own concern regarding this copy of the Note, see Show Cause Order, docket entry no. 95, because as the Kirbys correctly pointed out, the Defendants relied on the unindorsed copy of the Note in their Summary Judgment Motion.[6] See Note, docket entry no. 76-1.

In response to the Plaintiffs' arguments, counsel for the Defendants admitted to the Court that the explanations regarding

---

[6] The Defendants explained that when the Note was signed it was scanned and the scanned image was placed in an electronic origination file, which could tracked by the Defendant companies and monitored by the Plaintiffs. The Note was then transferred to a "collateral file" maintained by ReconTrust and indorsed on or about September 7, 2007, before it was placed in the "Fannie Mae Vault." See Decl. of Michele Sjolander, docket entry no. 100-1. The Plaintiffs questioned the veracity of this explanation, and the Court, not wanting the Plaintiffs to be prejudiced by the late-production of the new copy of the Note, allowed them to conduct limited discovery and file supplemental brief in opposition to the Defendants' Motion. See Dec. 7, 2011, Order.

the multiple transactions were less than clear. Tr. of Hrg. at 16. After carefully reviewing the briefs and the record, the Court agrees that the Defendants have made statements both before and during the litigation which are confusing if not carefully considered in the context of the entire process. Nevertheless, while the transactions in this case may be relatively complex, the gravamen of the case is simple: the Kirbys failed to make their mortgage payments, and the Defendants have the right to foreclose on their home.

The Kirbys' chief argument in regard to their quiet title claim appears to be that the Defendants "separated" the Note from the Deed, which they argue makes any subsequent transfers of the Note or the Deed void under Mississippi law.[7] This once-novel theory of mortgage law has been consistently rejected by courts which have considered its merit.[8] <u>See, e.g.</u>, <u>Cervantes v.</u>

---

[7] At the hearing, Clinton Kirby, conceded that he and his wife must owe someone for the money that they borrowed and expressed his desire for the Court to clarify which company they owe. Kirby's stated-concern is that he and his wife could be in danger of paying one company for their loan only to later discover that they owe the debt to another. Yet, the Kirbys have implied, without explicitly stating so in their pleadings, that the Note and the Deed, once split, can never be united, rending them both void <u>in aeternum</u>. Despite their statements to the contrary, the Kirbys appear to be attempting to wriggle free of mortgage under one of these theories. <u>See</u> Tr. of Hrg. at 10. ("We must owe somebody. But that is the question. Who is it? And I would submit that it is not any of the defendants.").

[8] At its core, this theory challenges the validity of MERS's role in the initial agreement between the parties and the subsequent transfers in which MERS was involved. The Deed of Trust,

Countrywide Home Loans, Inc., 656 F.3d 1034, 1044 (9th Cir. 2011) ("[T]he plaintiffs advance a novel theory of wrongful foreclosure. They contend that all transfers of the interests in the home loans within the MERS system are invalid because the designation of MERS as a beneficiary is a sham and the system splits the deed from the note, and, thus, no party is in a position to foreclose."); Kiah v. Aurora Loan Servs., LLC, 2011 WL 841282, at *4 (D. Mass. Mar. 4, 2011) ("Plaintiff's theory that the note and the mortgage somehow became disconnected from one another, and that the mortgage should disappear as a result, is therefore not tenable as a matter of law.").

To support their legal position, the Kirbys cite a case decided under Texas law in which the Fifth Circuit Court of Appeals stated that "An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity." See Kirby Lumber Corp. v. Williams, 230 F.2d 330, 333 (5th Cir. 1956). The Plaintiffs, however, misunderstand the meaning of this concept, which, if anything, bolsters the Defendants' position.[9] The

---

under the heading TRANSFER OF RIGHTS IN PROPERTY, names MERS the beneficiary of the Deed of Trust, acting as the nominee for the lender. Deed of Trust at 1-3. Under the terms of the agreement, MERS retained the legal right to exercise the security interest but agreed at all times to act on behalf of the Note Holder, which initially was Countrywide, but, due to the transferable nature of the Note, eventually was acquired by Fannie Mae. Id.

[9] The quotation comes from the Supreme Court case, Carpenter v. Longan, 83 U.S. 271 (1872). The fundamental holding in Carpenter is that when a mortgagor signs a promissory note in favor of a

Mississippi Supreme Court has articulated this rule in a way that better suits the present circumstance: "[when] the mortgage and the note[] are sufficiently connected. . . . [t]he assignment of the note[] operate[s] an assignment of the mortgage also." Holmes v. McGinty, 44 Miss. 94, 1870 WL 4406, at *1 (Miss. 1870); see also Lindsey v. Bates, 42 Miss. 397, 1869 WL 3765, at *2 (Miss. Err. & App. 1869)("[T]he assignment of the note carries with it the mortgage, which is a mere incident to the debt, and the assignee of the note is entitled to resort to the mortgage and all other securities, which were given for the purpose of assuring its payment, as its incidents."). Under Mississippi case law, which is consistent with general principles of mortgage law, the mortgage follows the note.[10] See also Restatement (Third) of Property (Mortgages) § 5.4.

Accordingly, the question critical to Kirbys' quiet title claim is a simple one: who held the Note at the time the Kirbys filed the present suit? This question is also easily answered:

---

mortgagee, he agrees that the mortgage upon the real estate will follow the note, and that when the note is assigned, the mortgage accompanies the assignment. Id. at 273-74.

[10] That "the security is a mere incident to debt" has proven to be the decisive factor in many cases where courts have considered transactions that involve MERS acting as the "beneficiary of the deed of trust." In re Robinson, 2011 WL 5854905 (Bkrtcy. E.D.N.C. Nov. 22, 2011) (applying North Carolina law); see also Commonwealth Property Advocates, LLC v. Mortgage Electronic Registration Systems, Inc., -- F.3d --, 2011 WL 6739431, at * (10 Cir. Dec. 23, 2011) (applying Utah law).

Fannie Mae. Despite the Kirbys' attempt to cast some metaphysical doubt over the Defendants' uncontroverted testimony, see Zenith Radio Corp., 475 U.S. at 586, at the time litigation began, the Note was indorsed in blank and sitting in the "Fannie Mae vault" in Simi Valley, California, making Fannie Mae the bearer of the Note.[11] See Miss. Code Ann. § 75-3-205(b). Thus, Fannie Mae was entitled to enforce the Note under Mississippi law. See Miss. Code Ann. § 73-3-301. Reduced to these terms, the present suit loses much of its complexity. Fannie Mae had the right to collect on the Note, which carried the Deed of Trust with it. The only question that remains is whether the Defendants were acting on behalf of Fannie Mae in attempting to foreclose on the Kirbys' home. See Holmes, 1870 WL 4406, at *1; Lindsey, 1869 WL 3765, at *2.

To answer that question, the Court needs only to look at the transactions of the various parties. The evidence shows that all Defendants are and were acting on Fannie Mae's behalf and are operating consistent with the agreements ratified by the Kirbys. At the time the Kirbys defaulted, BAC was acting as servicer for Fannie Mae, which had acquired the Note from Countrywide not long after it was signed by the Kirbys. MERS, by virtue of the agreement

---

[11] After reviewing the Plaintiffs' supplemental brief regarding the authenticity of the indorsements, the Court finds no genuine dispute regarding the authenticity of the indorsements and accepts the Defendants' explanation regarding the discrepancies between the two versions of the Note. To be clear, the Court finds there is no genuine factual dispute that the Note was indorsed in blank and delivered to Fannie Mae on September 7, 2011.

signed by the Kirbys at closing, was the nominee for the new lender Fannie Mae and on Fannie Mae's authority transferred the Deed to BAC after the Kirbys defaulted on their loan. BAC, who was in charge of collecting loan payments, subsequently reassigned the Deed to ReconTrust to proceed with the foreclosure process.

There is no evidence to show that any of the named Parties were operating independently of one another, or more importantly, that there is any doubt regarding whether ReconTrust was legally authorized to begin the process of foreclosure.[12] Courts that have examined similar or identical schemes have consistently upheld them under state laws similar to Mississippi's. Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc., -- F.3d --, 2011 WL 6739431 (10 Cir. Dec. 10, 2011) (Utah law); Cervantes, 656 F.3d 1034 (Arizona law); Horvath v. Bank of N.Y., N.A., 641 F.3d 617 (4th Cir. 2011) (Virginia law); Schmitt v. Stearns Lending, Inc., 2011 U.S. Dist. LEXIS 98868 (D. Utah Aug. 31, 2011) (Utah law); Pedersen v. Greenpoint Mortg. Funding, Inc., 2011 U.S. Dist. LEXIS 96397 (E.D. Cal. Aug. 26, 2011) (California law); Beyer v. Bank of Am., 2011 U.S. Dist. LEXIS 85704 (D. Or. Aug. 2, 2011)

---

[12] The Plaintiff attached a list of twenty-four (24) material factual disputes [docket entry no. 118-2] to their Supplemental Memorandum in response to the Defendants' Motion. The Court has reviewed each of the Defendants' claims and finds them all predicated their erroneous interpretation of Mississippi law. Further, the Court rejects the Plaintiffs' attempt to characterize some of the Defendants' admittedly oblique statements as evidence of a factual dispute.

(Oregon law); <u>White v. BAC Home Loans Servicing., L.P.</u>, 2011 U.S. Dist. LEXIS 42234 (E.D. Mo. Apr. 19, 2011) (Missouri law); <u>Corn v. Recontrust Co., N.A.</u>, 2011 U.S. Dist. LEXIS 34032 (D. Nev. Mar. 24, 2011) (Nevada law); <u>Kiah</u>, 2011 WL 841282 (Massachusetts law). Accordingly, the Court will grant summary judgment in favor of the Defendants regarding the Plaintiffs' quiet title claim.

**B.   Tortious Interference with Contract**

The Plaintiffs' Amended Complaint alleges that sometime in May 2008, the Kirbys received a statement from BAC showing a tax escrow deficiency which increased the Kirbys' monthly payment obligation under the Note from $1,783.00 to $2,107.00 (an increase of $324.00). As alleged by the Kirbys, BAC improperly computed the proper escrow payment amount because it underestimated the Kirbys' tax burden on the property by more than half of what the Kirbys had paid the year before the refinance. Because the $324.00 monthly payment increase was beyond the Kirbys' ability to pay, they allege that they contacted BAC and requested that they be able to pay the tax escrow deficiency in full rather than pay higher monthly payments, but BAC refused. BAC then informed the Kirbys that it would not accept future payments at the old monthly payment rate. The Kirbys were able to pay the increased monthly payment once but thereafter were unable to make the higher monthly payments. The Kirbys allege that BAC's refusal to accept the full amount of the tax escrow and refusal to accept the old, lower monthly payment

amounts caused them to default on the Note and therefore constitutes tortious interference with the contract between the Kirbys and the Note Holder.[13]

To state a claim for tortious interference with contract under Mississippi law, a plaintiff must show that:

> (1) the acts were intentional and willful; (2) that they were calculated to cause damage to the plaintiffs in their lawful business; (3) that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); and (4) that actual damage or loss resulted.

O.W.O. Inv., Inc. v. Stone Inv. Co., Inc., 32 So. 3d 439, 448-49 (Miss. 2010). Defendants move for summary judgment and argue, primarily, that the Kirbys have not established the third element of the claim because BAC, as servicer on the loan, acted in conformity with the Deed of Trust in refusing to accept the full escrow deficiency and thus did not act without right or justifiable cause. The Deed of Trust expressly provides that partial payments may not be accepted: "Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the loan current." Deed of Trust at 3, document no. 76-2. The Deed of Trust further provides that payments accepted by the Lender are to be applied first to interest, then principal, then to escrow items. Id. Thus, Defendants argue that BAC was in full compliance

---

[13] The Kirbys maintain that they were unaware in May 2008 of the true identity of the Note Holder and thus do not specify whether it was Countrywide or Fannie Mae.

with the Note and Deed of Trust in refusing to accept a lump-sum payment that the Kirbys intended to be applied solely to escrow.

The Kirbys do not respond to the Defendants' argument directly but instead focus on their argument that the identity of the Note Holder was unknown at the time BAC refused to accept the escrow payment. The Deed of Trust makes clear, however, the Note Holder had the right to refuse partial payments and to apply payments first to interest, then to principal, then to escrow items. In this regard, BAC, acting as servicer on behalf of the Note Holder, was within its rights to refuse the Kirbys' offer to pay the escrow deficiency in a lump sum. Moreover, the identity of the Note Holder at the time BAC refused to accept the escrow payment is irrelevant as the same Note and Deed of Trust were in effect at all times. Accordingly, Defendants' Motion for Summary Judgment as to the Kirbys' claim of tortious interference with contract must be granted.

### C.   Breach of Fiduciary Duty

The Kirbys next allege that BAC breached its fiduciary duties to them in refusing to accept the Kirbys' monthly payments for the original monthly payment of $1,783.00 after BAC had informed the Kirbys that their monthly payment would increase to $2,107.00 because of the tax escrow error. Defendants move for summary judgment on the basis that they did not owe fiduciary duties to the Kirbys, and even if they did, BAC's refusal to accept a partial

payment was proper under the terms of the Deed of Trust and thus could not violate any alleged fiduciary duties.

As discussed above, this Court agrees that BAC's refusal to accept a partial payment from the Kirbys was within the rights of the Note Holder under the Deed of Trust and thus could not constitute a breach of fiduciary duty. Even if that were not the case, however, this Court agrees that the Defendants owed no fiduciary duty to BAC. The Mississippi Supreme Court "has never held that the relationship between a mortgagor and mortgagee is a fiduciary one." Hopewell Enters., Inc. v. Trustmark Nat'l Bank, 680 So. 2d 812, 816 (Miss. 1996). Instead, the mortgagor-mortgagee relationship is "simply an arms length business transaction." Id. at 817. The Kirbys' attempt to evade this clear precedent by arguing that BAC was not the mortgagee but rather the servicer on the mortgage.

The Kirbys further argue that the relevant factors laid out in Hopewell point to the existence of a fiduciary duty here. Those factors are:

> (1) the activities of the parties go beyond their operating on their own behalf, and the activities for the benefit of both; (2) where the parties have a common interest and profit from the activities of the other; (3) where the parties repose trust in one another; and (4) where one party has dominion or control over the other.

Id. at 816-17 (citing Carter Equip Co. v. John Deere Indus. & Equip. Co., 681 F.2d 386 (1982)). But none of those factors militate in favor of finding such a duty. BAC's activities in

accepting mortgage payments for the mortgagee, either Countrywide or Fannie Mae, were on its own behalf–to fulfill their obligations to the mortgage–and the Kirbys' actions in paying their mortgage was for their own benefit–to fulfill their obligations under the Note and Deed of Trust. Neither BAC's nor the Kirbys' activities benefitted the other party. Secondly, the relationship between the two was simply an arm's length business transaction; it was not a common endeavor where the activities benefitted both parties. Nor have the Kirbys suggested that there was any particular trust reposed between the Kirbys and BAC beyond those found in ordinary business dealings. Lastly, while BAC may have had some power with regard to the Kirbys in that they determined whether to refuse the Kirbys' mortgage payments, there was no "dominion or control." Again, this was simply an arm's length business transaction, nearly identical to that between a mortgagor and a mortgagee and found by Hopewell not to create fiduciary duties absent unusual circumstances. In addition, it is noteworthy that although this is a motion for summary judgment and the existence of a fiduciary duty is a fact question, Carter, 681 F.2d at 390, the Kirbys do not cite to anything in the record to support the existence of a fiduciary duty. For all of these reasons, the motion for summary judgment as to the fiduciary duty claim is granted.

**D.   Breach of Contract**

In their breach of contract claim, the Kirbys allege that

Countrywide failed to pay off their previous mortgage with New South Federal Bank following the 2007 refinance with Countrywide. The Kirbys allege that, following the refinance, New South Federal claimed there was a balance of $1,800.00 on the original mortgage because Countrywide failed to pay the full loan balance as was intended in the refinance transaction. In their Amended Complaint, the Kirbys do not identify which contract was breached by Countrywide's failure to pay off the original mortgage but in response to Defendants' Motion for Summary Judgment, the Kirbys argue that the HUD-1 Settlement Statement ("HUD-1") reflected a pay off to New South Federal Bank to be made at closing and thus constituted a contract. The Kirbys admit, however, that "no separate contract was drawn up explicitly stating that 'Lender will pay off your mortgage with New South Federal Bank.'" Pl. Resp. at 16, docket entry no. 79.

The Defendants move for summary judgment as to this breach of contract claim, arguing that there was no contract requiring Countrywide to pay off the Kirbys' previous mortgage because neither the Note nor the Deed of Trust address the pay off of the New South Federal loan. As to the argument that the HUD-1 amounted to a contract, the Defendants cite to a federal district court case from Washington holding that the HUD-1 was not a contract because there was no separate consideration for it and it contained no promise to do something but rather was simply a "true and accurate

statement." <u>Cornelius v. Fidelity Nat. Title Co.</u>, 2009 WL 596585, at *3-4 (W.D. Wash. Mar. 9, 2009).

This Court agrees that the HUD-1 is not a contract. Under Mississippi law, the elements of a valid contract include consideration and an agreement that is sufficiently definite. <u>Green Tree Serv. LLC v. McGee</u>, 2010 WL 1141138, at *2 (S.D. Miss. Mar. 22, 2010). Here, the Kirbys do not point to the existence of any facts on this motion for summary judgment to suggest there was consideration for the signing of the HUD-1. Moreover, a cursory reading of the HUD-1 reflects that it is not sufficiently definite to amount to a contract. It consists of a list of various sums involved in the refinance of the Kirbys' mortgage but it contains neither full sentences, nor paragraphs-nothing that would indicate that either the Kirbys or any of the Defendants are contractually bound. The Defendants' Motion for Summary Judgment as to the breach of contract claim is granted.

### E.   Slander of Title

The Kirbys allege that BAC slandered the title to their property by causing publication of a false claim to be the owner of the Note and Deed of Trust in the Forrest County land records. The Kirbys further claim that BAC knew that it was not the "legal holder of said indebtedness" as claimed and thus that the claim was malicious. In order to prevail on a slander of title claim, the Kirbys must show that BAC "falsely and maliciously publish[ed]

19

matter which [brought] in question or disparag[ed] the title to
[the Kirbys' property], thereby causing special damage to [them]."
See Jeanes-Kemp, LLC v. Johnson Controls, Inc., No. 1:09-CV-723
LG-RHW, 2010 WL 1667287, at *2 (S.D. Miss. April 23, 2010).

The Kirbys cannot meet any of the elements of a slander of
title claim. First, as discussed at length above, the information
published by BAC was neither false nor malicious. Secondly, as the
court noted in Jeanes-Kemp, a slander of title claim often
accompanies a quiet title claim, which in the present case the
Court found has no merit. See Jeanes-Kemp, LLC, 2010 WL 1667287, at
*1. The Kirbys may have "questioned" which company held title to
their property, but their subjective confusion as to who owned the
title is not evidence that the title was "disparaged." In the
present case, the title to the Kirbys' home was never in doubt.
Finally and relatedly, the Kirbys have not adduced evidence that
they incurred special damage as a consequence of BAC's actions. For
all these reasons, the Defendants are entitled to summary judgment
in their favor with respect to this claim.

**F.    Fraudulent Misrepresentation**

The Kirbys next allege fraudulent misrepresentation on the
part of the Defendants. This claim is primarily related to the fact
that MERS was listed as the nominee and beneficiary on the Deed of
Trust, despite that MERS was not the lender on the Note. The Kirbys
contend that Countrywide knew that MERS was not lending money to

the Kirbys or collecting payments and that Countrywide could somehow conceal transfers of the Note by naming MERS as the beneficiary on the Deed of Trust,[14] thereby concealing the true identity of the Note Holder and defrauding the Kirbys by having someone other than the true Note Holder attempt to complete a trustee's sale. The Kirbys further allege that Countrywide committed fraud in representing that MERS was a separate corporation, despite the fact that Countrywide was a "member" of MERS and Countrywide employees completed paperwork purporting to transfer ownership of the Deed of Trust from MERS to BAC in order for BAC to conduct a sale of the property.

These allegations do not state a claim for fraudulent misrepresentation under Mississippi law. The elements for such a claim are:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury.

Holland v. People's Bank and Trust Co., 3 So. 3d 94, 100 (Miss. 2008). The second essential element is a false statement, which the Kirbys have not alleged. First, listing MERS as the beneficiary of

---

[14] The Kirbys state that BANA, not Countrywide or Fannie Mae, was responsible for the alleged fraudulent acts. Presumably, the Kirbys are referring to BANA in its position as successor in interest to Countrywide.

the Deed of Trust when Countrywide was the Note Holder was not a false statement. Moreover, with respect to the Kirbys allegation that Countrywide, and later Fannie Mae, somehow concealed the fact that MERS was the beneficial owner of the Deed of Trust but not the Note Holder, the Deed of Trust specifically states that MERS is acting as "nominee for Lender and Lender's successors and assigns" and "holds only legal title to the interests granted by Borrower in this Security Instrument." Deed of Trust at 1, 2, document no. 76-2. Thus, there was no misrepresentation as the documents, which the Kirbys signed, disclosed the relationships among all the parties.

Lastly, the Kirbys have submitted no evidence to contradict that MERS was a separate corporation from both Countrywide and Fannie Mae or that a statement to that effect was false. The fact that employees of Fannie Mae directed MERS to transfer the Deed of Trust to BAC confirms only that the structure created by the Note and Deed of Trust worked as intended. MERS acted on behalf of Fannie Mae (and at the direction of Fannie Mae employees) and assigned the Deed of Trust to BAC, in conformity with the representation of the Deed of Trust that MERS was a nominee for the Lender. That fact does not indicate that MERS and either Countrywide or Fannie Mae were the same corporate entity. In sum, there is simply no basis in law or fact for the Kirbys' claim of fraudulent misrepresentation and thus summary judgment must be granted.

22

### G.   Negligent Misrepresentation

The Kirbys next assert a claim for negligent misrepresentation based on Countrywide's miscalculation regarding the escrow amount for county taxes, alleging that Countrywide knew that the amount was less than half the amount the Kirbys had paid the previous year. The alleged damage resulted when the Kirbys were not able to pay the increase in their monthly payments once the true amount of county taxes was ascertained. The Defendants move for summary judgment, first arguing that the claim is founded in the Real Estate Settlement Procedures Act ("RESPA"), rather than state law, and RESPA does not provide a private right of action. The Defendants do not, however, cite any authority for the proposition that a state law claim related to settlement procedures is somehow preempted by RESPA and thus the Court does not address this argument.

The Defendants further argue that the negligent misrepresentation claim fails under a state law analysis because the tax escrow amount that appeared on the HUD-1 was an estimate and thus not a misrepresentation. Under Mississippi law, the elements for a claim of negligent misrepresentation are:

> (1) a misrepresentation or omission of a fact; (2) that the representation or omission is material or significant; (3) that the person/entity charged with the negligence failed to exercise that degree of diligence and expertise the public is entitled to expect of such persons/entities; (4) that the plaintiff reasonably relied upon the misrepresentation or omission; and (5) that the plaintiff suffered damages as a direct and

proximate result of such reasonable reliance.

Mladineo v. Schmidt, 52 So. 3d 1154, 1164-65 (Miss. 2010) (quoting Hazlehurst Lumber Co., Inc. v. Miss. Forestry Comm'n, 983 So. 2d 309, 313 (Miss. 2008)). This Court agrees that the Defendants clearly disclosed that the tax escrow amount was an estimate and thus it was not a misrepresentation. A document entitled "Initial Escrow Account Disclosure Statement," which was apparently part of the loan closing documents, states: "This is an estimate of activity in your escrow account during the coming year based on payments anticipated to be made from your account." Docket entry no. 76-11. The Kirbys contend that their misrepresentation claim is based on the HUD-1, which restates the tax escrow amount found on the Account Disclosure Statement. But, as discussed above, the HUD-1 is simply a list of all the relevant charges related to the loan transaction and necessarily restates numbers that are derived from other features of the loan agreement. The HUD-1 is not, standing alone, the basis for misrepresentation. Indeed, the United States District Court for the district of Maryland recently held that an escrow estimate during a real estate settlement was not false as a matter of law because it was explicitly deemed an estimate. Abel-Malak v. JP Morgan Chase Bank, N.A., 748 F. Supp. 2d 505, 514 (D. Md. 2010). Finding no basis in fact or law to support the Plaintiffs' negligent representation claim, the Court grants summary judgment in favor of the Defendants.

24

### H. Conspiracy to Commit Fraud

Under their eighth and final cause of action, the Plaintiffs attempt to assert a claim for "conspiracy to commit fraud" based on the premise that the Defendants "caused instruments to be filed in the Forrest County land records and in the public domain that BAC, not [FNMA], is or was the holder in due course with the right to enforce the subject Note" despite the fact that the Defendants knew Fannie Mae was the holder. Am. Compl. ¶¶ 92-95, docket entry no. 25. Plaintiffs' legal basis for this theory is again predicated on their misinterpretation of the court's holding in <u>Kirby Lumber Corporation</u>. This Court has consistently rejected the Plaintiffs' theory that the Defendants' actions were fraudulent and does so again one final time with regard to their conspiracy claim: there is no merit to the assertion that BAC's filing of the Deed in the land records is evidence of a conspiracy to commit fraud. Accordingly, the Court finds no merit to the Kirbys' eighth and final claim and therefore will grant summary judgment in favor of the Defendants.

### V. CONCLUSION

Having considered each individual claim in light of the record before it and under Mississippi law, the Court finds no basis in law or in fact to support any of the Plaintiffs' claims and therefore the Court finds that the Defendants are entitled to summary judgment as a matter of law. Fed. R. Civ. Pro. 56(a).

Accordingly,

**IT IS, THEREFORE, HEREBY ORDERED** that the Defendants' Motion for Summary Judgment [**docket entry no. 76**] is **GRANTED.** Pursuant to Rule 58(a), a separate final judgment will be entered dismissing the Plaintiffs' case against the Defendants with prejudice.

**IT IS FURTHER ORDERED** that the Defendants' Motion in Limine [**docket entry no. 83**] is **DISMISSED** as moot.

**IT IS FURTHER ORDERED** that the Plaintiffs' Motion in Limine [**docket entry no. 86**] is **DISMISSED** as moot.

**IT IS FURTHER ORDERED** that the Plaintiffs' Motion to Cease and Desist [**docket entry no. 119**] is **DISMISSED** as moot.

So **ORDERED** this the 22nd day of March, 2012.


    /s/ David Bramlette

**UNITED STATES DISTRICT JUDGE**